Tomás Rivera Santiago, demandante y recurrente, *v.* Secretario de Hacienda de Puerto Rico, demandado y recurrido.

*Número:* RE-86-514 *Resuelto:* 30 de junio de 1987

266

*Luis E. Vázquez Santos*, de *Cintrón & Vázquez*, abogado del recurrente; *Carmen A. Bravo de Riefkohl, Procuradora General Auxiliar*, abogada del recurrido.

EL JUEZ ASOCIADO SEÑOR NEGRÓN GARCÍA emitió la opinión del Tribunal.

■ "El cobro de contribuciones por el Estado no es irrestricto. Está sujeto a trámites mínimos de 'debido proceso de ley', a la exigibilidad y validez de la deuda, y a los términos prescriptivos dispuestos en los diversos estatutos." *Carazo* v. *Srio. de Hacienda*, 118 D.P.R. 306 (1987). A la luz de este enfoque, evaluamos la validez de los procedimientos seguidos por el Departamento de Hacienda al implantar las disposiciones de la Ley Núm. 1 de 12 de agosto de 1985 (13 L.P.R.A. sec. 2251 y ss.) relativas al relevo de pago de la contribución especial impuesta en dicha ley.

## I

La Ley Núm. 1, *supra*, impuso una contribución especial de veinte por ciento (20%) del monto del principal e interés acumulado sobre todo certificado de depósito pagadero al portador expedido por instituciones financieras. Según la Exposición de Motivos de la Ley Núm. 1, *supra*, su propósito fue "fiscalizar y vigilar diligentemente que cada ciudadano pague las contribuciones que le correspondan conforme a sus ingresos", y adoptar una medida ágil y eficaz "para garantizar el cobro de la contribución que legítima y justamente deba pagar todo individuo y que a su vez invalid[ara] todo intento de evasión contributiva". 1985 Leyes de Puerto Rico 869.

Conforme el Art. 3 (13 L.P.R.A. sec. 2251b) el contribuyente puede pagarla directamente a Hacienda o — previa autorización— a través de la institución financiera. Desde la fecha de pago tiene noventa (90) días para solicitar el reintegro total o parcial si demuestra "que la totalidad o parte del principal e interés acumulado representado por el certificado de depósito fue objeto de la imposición o exoneración del pago de contribución sobre ingresos bajo

las disposiciones de la Ley de Contribuciones sobre Ingresos de 1954, según enmendada". Art. 5 (13 L.P.R.A. sec. 2251d).

Si no está de acuerdo con la decisión de Hacienda, puede pedir reconsideración dentro de quince (15) días de la notificación de dicha decisión. Art. 3 (13 L.P.R.A. sec. 2251b). Contra el dictamen en reconsideración, puede acudir al Tribunal Superior mediante recurso de revisión dentro del término judicial de treinta (30) días de notificada tal determinación. Art. 3, *supra*; *Ortiz* v. *Srio. de Hacienda*, 118 D.P.R. 571 (1987).

En virtud de los Arts. 5 y 9 de la Ley Núm. 1 (13 L.P.R.A. secs. 2251d y 2251h) el Secretario de Hacienda adoptó un reglamento para implantar sus disposiciones. Su Art. 6 establece el siguiente procedimiento para solicitar el relevo del pago o retención:

> En aquellos casos en que la persona reclama tener derecho al relevo del pago de la contribución impuesta por la Ley, deberá presentar una reclamación por escrito en el impreso provisto por el Departamento de Hacienda a esos efectos exponiendo en detalle las razones que demuestran su derecho al relevo y acompañar con la misma la correspondiente evidencia.
>
> Toda reclamación que presenten las personas acompañada con la evidencia será recibida y evaluada por el Comité especial designado por el Secretario de Hacienda.
>
> El Comité realizará la investigación que estime pertinente a los fines de establecer la veracidad de las alegaciones contenidas en las reclamaciones. A base de la evidencia recibida por el Comité y otros factores que tenga a bien considerar, tales como las planillas de contribución sobre ingresos radicadas por las personas y el historial contributivo de dichos contribuyentes, el Comité recomendará al Secretario la acción correspondiente. Esta recomendación deberá ser hecha al Secretario por una mayoría de los miembros del Comité.
>
> El Comité tendrá treinta (30) días a partir de la fecha de la solicitud de relevo por parte de la persona para reconocer

o denegar el relevo solicitado. Si la determinación es favorable, el Departamento de Hacienda procederá a expedir un documento acreditativo de que no existe la obligación por parte de la persona de pagar la contribución. Dicho documento deberá ser presentado ante la institución financiera como evidencia al efectuar la transacción.

Por el contrario, si el Comité determinare que la persona no tiene derecho al relevo solicitado, notificará a ésta su obligación de pagar la contribución impuesta por la Ley. Dicha persona deberá efectuar el pago de la misma excepto que haya solicitado reconsideración al Secretario de la determinación.

El Comité podrá recomendar un relevo parcial de la contribución impuesta por la Ley en cuyo caso determinará e informará a dicha persona el monto de la contribución que vendrá obligada a pagar, sujeto a las disposiciones establecidas en este Artículo. Reglamento para implantar las disposiciones de la Ley Núm. 1, aprobada el 12 de agosto de 1985, págs. 5–6.

A su vez, para solicitar reconsideración de la anterior determinación, el Art. 7(a) dispone:

Cualquier persona adversamente afectada por una decisión o determinación del Comité podrá solicitar la reconsideración de dicha decisión ante el Secretario dentro de los quince (15) días siguientes a la fecha de notificación de tal decisión o determinación. El Secretario deberá emitir su decisión con respecto a la solicitud de reconsideración dentro de los treinta (30) días siguientes a la fecha de la solicitud. Reglamento, *supra.*

## II

Con este esquema legal y reglamentario en mente, expongamos el trasfondo fáctico y procesal.

Como tantas otras personas, al aprobarse la Ley Núm. 1, *supra*, Tomás Rivera Santiago poseía varios certificados de depósito que quedaron sujetos a sus disposiciones. Solicitó al Secretario de Hacienda relevo del pago de la contribución

especial y en su apoyo sometió prueba. Éste se negó comunicándole lo siguiente:

> Hemos examinado detenidamente la solicitud que usted radicó para que se le releve del pago de la contribución especial impuesta por la Ley Núm. 1 del 12 de agosto de 1985, sobre los certificados de depósito al portador que tiene en su banco.
>
> La evidencia suministrada no cumple con las disposiciones del Artículo 6 del Reglamento emitido para la implementación de la referida Ley.
>
> En vista de lo anterior, usted deberá pagar la contribución impuesta acudiendo al Departamento de Hacienda o puede autorizar a su institución bancaria para que le retenga el importe de la misma.
>
> Cualquier solicitud de reconsideración sobre la presente determinación deberá radicarse ante el Secretario de Hacienda dentro de los quince (15) días siguientes a la fecha de esta comunicación. Anejo I, pág. 5.

Rivera Santiago solicitó reconsideración. El Secretario de Hacienda reafirmó así su negativa:

> Hemos examinado detenidamente la solicitud de reconsideración que usted radicó para que se le releve del pago de la contribución especial impuesta por la Ley Número 1 del 12 de agosto de 1985.
>
> Los documentos adicionales suministrados no alteran de modo alguno nuestra determinación original de que no hay evidencia razonable que justifique el otorgar el relevo solicitado.
>
> En vista de lo anterior, nos vemos en la obligación de confirmar la decisión anterior en la cual se deniega la solicitud de relevo. Usted deberá pagar la contribución impuesta, acudiendo al Departamento de Hacienda o puede autorizar a su institución bancaria para que le retenga el importe de la misma.
>
> De no estar conforme con nuestra determinación, usted podrá solicitar revisión judicial de la misma ante la Sala del Tribunal Superior correspondiente al lugar de su residencia,

dentro de los treinta (30) días siguientes a la notificación de la presente decisión. Anejo I, pág. 8.

Inconforme, Rivera Santiago recurrió *en tiempo* al Tribunal Superior, Sala de San Juan. En su petición de revisión[1] expuso que sometió prueba de sus ingresos sujetos a contribución y exentos recibidos desde 1973 hasta 1984. Analizó tales ingresos conforme una "fórmula" establecida por el Secretario de Hacienda y reiteró que procedía el relevo. El Secretario de Hacienda pidió la desestimación bajo el fundamento de que no se había demostrado que su decisión fuera ilegal, arbitraria o irrazonable, o que mediara error o prejuicio al apreciar la prueba. Rivera Santiago replicó aduciendo que la argumentación contenida en su recurso de revisión era la única posible, pues desconocía las razones o fundamentos específicos del Secretario para no relevarlo.

El tribunal de instancia declinó revisar ya que no se incluyeron los documentos que forman parte del expediente del Departamento de Hacienda, ni se relacionó la naturaleza de la prueba allí presentada. A solicitud de Rivera Santiago, mediante orden de mostrar causa, revisamos.

En esencia, su queja es que hay ausencia total de determinaciones de hechos y fundamentos de la decisión administrativa. Por tal razón, no sólo ignora los hechos que el Secretario de Hacienda estimó probados, sino que no ha tenido oportunidad de refutar la prueba en contrario, si alguna, que apoye la denegatoria a su solicitud. Sostiene que ello configura una violación del debido proceso de ley.

---

[1] El vehículo apropiado para acudir al Tribunal Superior es el de revisión dentro de los treinta (30) días de la notificación. *Ortiz* v. *Srio. de Hacienda,* 118 D.P.R. 571 (1987). Cuando un contribuyente se aparta de ese término, la inobservancia y desviación es fatal e impide al foro judicial intervenir en el reclamo *independientemente de si el Secretario de Hacienda ha formulado o no por escrito sus determinaciones de hecho y fundamentos en que descansa.* Véase *Muñiz* v. *Srio. de Hacienda,* 118 D.P.R. 753 (1987).

Por su parte, el Secretario de Hacienda alega que cumplió con el debido procedimiento, pues le concedió oportunidad de ser oído, presentar prueba y su decisión fue fundamentada "en el expediente". Indica además, que el procedimiento administrativo seguido fue "justo". Procede revocar.

## III

El derecho al debido procedimiento de ley, consagrado en la Sec. 7 del Art. II de nuestra Constitución, L.P.R.A. Vol. 1, ed. 1982, pág. 275, preceptivo de que "[n]inguna persona será privada de su libertad o propiedad sin debido proceso de ley", tiene su contraparte y modelo en las Enmiendas V y XVI de la Constitución federal.[2] Sus orígenes se remontan a la Carta Magna. J. Barron y C. T. Dienes, *Constitutional Law: Principles and Policy*, 2da ed., Virginia, Ed. Michie Company, 1982, pág. 235.

A tono con su concepción, el debido proceso de ley se manifiesta en dos dimensiones distintas, *sustantiva* y *procesal. Loudermill* v. *Cleveland Bd. of Educ.*, 721 F.2d 550 (1983). Bajo la primera, los tribunales examinan la validez de la parte sustantiva de una ley a la luz de la Constitución. Véase, *e.g., Marina Ind., Inc.* v. *Brown Boveri Corp.*, 114 D.P.R. 64, 77–86 (1983). La segunda, de ámbito procesal, toma en cuenta las garantías procesales mínimas que el Estado debe proveerle a un individuo al afectarle su vida, propiedad o libertad. R. D. Rotunda, J. E. Nowak y J. N. Young, *Treatise on Constitutional Law: Substance and Procedure*, Minnesota, West Pub. Co., 1986, Sec. 14.6. Su aplicabilidad *procesal* requiere un interés individual de

---

(2) El lenguaje de ambas disposiciones es idéntico, excepto que aquí se eliminó la palabra "vida", como consecuencia de haberse proscrito la pena de muerte. 2 y 3 Diario de Sesiones de la Convención Constituyente, 1501–1509 y 1626–1628 (1952). Se hizo constar que, aun con este cambio, se mantenía el "concepto jurídico de la enmienda quinta". Íd., pág. 1627.

libertad o propiedad. *Board of Regents* v. *Roth,* 408 U.S. 564 (1972). Cumplida esta exigencia, entonces hay que determinar cuál es el procedimiento exigido *(what process is due). Loudermill* v. *Cleveland Bd. of Educ.,* supra; *Morrissey* v. *Brewer,* 408 U.S. 471, 481 (1972).

La característica medular de este derecho es que el procedimiento que siga el Estado sea justo *(fair). López Vives* v. *Policía de P.R.,* 118 D.P.R. 219 (1987). "La garantía esencial de la cláusula de debido proceso es que sea justa. El procedimiento debe ser fundamentalmente justo al individuo en la resolución de los hechos y derechos que sirven de base para aquellas acciones gubernamentales que le privan de su vida, libertad o propiedad. Si bien situaciones diferentes pueden imponer diferentes tipos de procedimientos, siempre está el requisito general de que el proceso gubernamental sea justo e imparcial." (Traducción nuestra.) Rotunda, Nowak y Young, *op. cit.,* Sec. 17.8. En el caso de autos, estamos ante la aplicación del principio en su dimensión procesal, pues la actuación del Departamento de Hacienda priva a Rivera Santiago de una forma tradicional de propiedad. Véanse: *Carazo* v. *Srio. de Hacienda,* supra; Rotunda, Nowak y Young, *op. cit.,* Sec. 17.5.

## IV

Nuestra doctrina jurisdiccional, en materia de derecho administrativo, proclama que bajo ciertas circunstancias y en un sinnúmero de situaciones, la observancia del debido procedimiento de ley implica que se efectúen determinaciones de hecho y se expresen las razones o fundamentos para la decisión administrativa. *Vega Cruz* v. *Comisión Industrial,* 110 D.P.R. 349, 352, 353 (1980); *P.N.P.* v. *Tribunal Electoral,* 104 D.P.R. 1, 3–4 (1975); *López* v. *Junta Planificación,* 80 D.P.R. 646, 667 (1958); *Godreau &*

*Co.* v. *Com. Servicio Público,* 71 D.P.R. 649, 655–656 (1950).(3)

██ En *López* v. *Junta Planificación,* supra, pág. 667, expresamos la razón de ser de este requisito:

> [L]a Junta de Planificación ejerce poderes cuasi-judiciales al considerar y resolver una solicitud. ... En consecuencia, tiene que celebrar una vista administrativa de carácter cuasi-judicial, ajustándose a los requisitos del debido proceso de ley. Es imprescindible que la Junta haga conclusiones de hecho fundadas en la prueba a ser presentada en dicha vista. *Además, debe exponer las razones o fundamentos que sirven de base a su decisión.* ... [L]a Junta debió exponer los fundamentos de hecho, refiriéndose tanto a los hechos básicos que estimó probados, luego de resolver cualesquier conflictos en la prueba, como a las inferencias de hecho que en última instancia creyó justificadas. Por otra parte, la Junta debió exponer las razones o fundamentos de derecho que sirvieron de base a su decisión. De otro modo, es obvio que toda revisión judicial sería imposible. (Énfasis suplido y citas omitidas.)

██ Aun cuando, como en el caso de autos, el estatuto guarda silencio y no impone al organismo administrativo la obligación de hacer determinaciones de hecho y expresar las razones para su decisión —sea un procedimiento administrativo formal o informal— como regla general tiene que hacerlo.(4) K. C. Davis, *Administrative Law Treatise,* 2da ed., San Diego, K. C. Davis Pub., 1983, Vol. 3, Secs. 14.21–14.24. Véanse: *e.g., Matlovich* v. *Secretary of the Air Force,* 591 F.2d 852 (D. C. 1978); *City of Nome* v. *Catholic Bishop of No. Alaska,* 707 P.2d 870 (Alaska 1985);

---

(3) Igual orientación se sigue en la jurisdicción federal: *Goldberg* v. *Kelly,* 397 U.S. 254, 271 (1970); *Morrissey* v. *Brewer,* 408 U.S. 471, 487 (1972); *Wolff* v. *McDonnell,* 418 U.S. 539 (1974).

(4) Claro está, no toda decisión de un organismo administrativo exige el cumplimiento riguroso de este requisito. *P.N.P.* v. *Tribunal Electoral,* 104 D.P.R. 3 (1975).

*Fields* v. *Kodiak City Council*, 628 P.2d 927, 933 (Alaska 1981). Las razones deben ser suficientes para comunicar a las partes los fundamentos decisorios y permitirles una revisión judicial. *Godreau & Co.* v. *Com. Servicio Público*, supra, págs. 655–656.

Reafirmamos la vigencia de este requisito procesal en nuestra jurisdicción. Indudablemente es un instrumento efectivo para alcanzar varios objetivos. *Primero*, proporciona a los tribunales la oportunidad de revisar adecuadamente la decisión administrativa y facilita esa tarea. *Mundo* v. *Tribunal Superior*, 101 D.P.R. 302, 303 n. 1 (1973); *López* v. *Junta Planificación*, supra; *P.N.P.* v. *Tribunal Electoral*, supra; *Securities Comm'n* v. *Chenery Corp.*, 332 U.S. 194, 196–197 (1947); *Dunlop* v. *Bachowski*, 421 U.S. 560, 568–572 (1975); *Matlovich* v. *Secretary of the Air Force*, supra; *Sierra Club* v. *United States Army Corps of Eng.*, 772 F.2d 1043, 1051 (2do Cir. 1985); H. Friendly, *"Some Kind of Hearing"*, 123 U. Pa. L. Rev. 1267, 1292 (1975). Véase, además, *The Richards Group* v. *Junta de Planificación*, 108 D.P.R. 23, 46 (1978). Al decir del Juez Cardozo, "[d]ebemos conocer qué significa una decisión antes de que sea nuestra obligación resolver si es correcta o errada". (Traducción nuestra.) *U.S.* v. *Chicago, M., St. P. & P.R. Co.*, 294 U.S. 499, 510–511 (1935).

Aclaramos no obstante, que la intención judicial en recursos presentados en virtud de la Ley Núm. 1, *supra,* no implica juicios *de novo.* No existe mandato legal que así lo requiera. *Rivera* v. *Benítez, Rector*, 73 D.P.R. 377, 381–382 (1952). Bajo este prisma los tribunales únicamente examinarán si Hacienda incidió sobre cuestiones de derecho, incluso si las determinaciones fácticas están basadas en prueba sustancial. Ibíd. Precisamente, este ámbito de intervención judicial limitada pone de manifiesto la

importancia y esencialidad de que en algún momento significativo u oportuno el contribuyente tenga la oportunidad de ser oído y que la decisión administrativa sea explicada.

 *Segundo*, el requisito fomenta que la agencia adopte una decisión cuidadosa y razonada dentro de los parámetros de su autoridad y discreción. Contribuye a evitar actuaciones administrativas arbitrarias, caprichosas, discriminatorias, irracionales o sin jurisdicción. *Matlovich* v. *Secretary of the Air Force*, supra; *Hameetman* v. *City of Chicago*, 776 F.2d 636 (7mo Cir. 1985); *Greater Boston Television Corporation* v. *F.C.C.*, 444 F.2d 841, 851 (D. C. 1970); R. Rabin, *Job Security and Due Process: Monitoring Administrative Discussion Through a Reasons Requirement*, 44 U. Chi. L. Rev. 60, 84 (1976).

*Tercero*, ayuda a la parte afectada a entender por qué el organismo administrativo decidió como lo hizo, y así, aquélla puede, mejor informada, decidir si acude al foro judicial o acata la determinación. *Matlovich* v. *Secretary of Air Force*, supra. Véase además *P.N.P.* v. *Tribunal Electoral*, supra, pág. 4.

*Cuarto*, promueve la uniformidad intraagencial. Friendly, *op. cit.*, pág. 1292. Este objetivo es vital, particularmente en una situación como la de autos, en que el proceso decisorio institucional es adoptado por distintos miembros de un comité especial de la agencia, con la encomienda de celebrar vistas y recibir la prueba. Dicho de otro modo, la expresión de razones estimula que en la dinámica decisoria se utilicen criterios análogos para situaciones similares o sustancialmente parecidas, aun cuando varíe la composición del comité.

*Finalmente*, este argumento evita que los tribunales nos apropiemos de funciones que corresponden propiamente, bajo el concepto de especialización y destreza (*expertise*), a

las agencias administrativas. *Mundo* v. *Tribunal Superior*, supra.

## V

En el caso de autos las decisiones administrativas del Secretario de Hacienda —tanto la original como en reconsideración— fueron unas comunicaciones pro forma donde sólo le informó al contribuyente Rivera Santiago su denegatoria a concederle el relevo solicitado. No se le especificaron ni explicaron las razones para tal rechazo. En tiempo y correctamente, éste cuestionó tal proceder. Ese trámite no satisface el debido procedimiento de ley en su dimensión procesal.

En estas circunstancias, *procede dictar sentencia y devolver el asunto al Departamento de Hacienda, para que como foro administrativo, en el ejercicio de su función cuasi judicial, proceda a formular por escrito y notificar las determinaciones de hechos y fundamentos para denegar — ya sea total o parcialmente— la solicitud de relevo del recurrente Rivera Santiago.*

El Juez Asociado Señor Hernández Denton emitió voto particular.

—O—

Voto particular emitido por el Juez Asociado Señor Hernández Denton.

Estoy de acuerdo con la opinión emitida por el Tribunal, por entender que el Departamento de Hacienda no cumplió con el debido proceso de ley al resolver su petición de relevo sin formular unas conclusiones de hechos y de derecho. En vista de que la determinación del Departamento de Hacienda afectó adversamente el dinero que tenía el señor Rivera Santiago en un certificado de depósito al portador,

corresponde a esa agencia administrativa promulgar un procedimiento que ofrezca en una etapa significativa u oportuna las garantías jurídicas mínimas requeridas por el debido proceso de ley. *Vélez Ramírez* v. *Romero Barceló*, 112 D.P.R. 716, 730 (1982).

Para evaluar qué tipo de oportunidad de ser oído es la adecuada, hemos elaborado unos criterios que nos permiten hacer el balance necesario entre los intereses gubernamentales y los de la persona afectada. *Vélez Ramírez* v. *Romero Barceló*, supra, pág. 730; véanse: *Maldonado Elías* v. *González Rivera*, 118 D.P.R. 260 (1987); R. D. Rotunda, J. E. Nowak y J. N. Young, *Treatise on Constitutional Law: Substance and Procedure*, Minnesota, West Pub. Co., 1986, Sec. 17.7.(¹) Por ejemplo, no se ha requerido una vista de tipo cuasi judicial cuando una emergencia requiere acción inmediata del gobierno con miras a proteger la salud, la seguridad o las finanzas públicas. *Calero-Toledo* v. *Pearson Yatch Leasing Co.*, 416 U.S. 663, 679 (1974); *G.M. Leasing Corp.* v. *United States*, 429 U.S. 338, 352 (1977). K. C. Davis, *Administrative Law Treatise*, 2da ed., San Diego, K. C. Davis Pub., 1983, Vol. 2, Sec. 12.11, pág. 454; B. Schwartz, *Administrative Law*, 2da ed., Boston, Little, Brown & Co., 1984, Sec. 5.10, pág. 223. Esta excepción a la norma general es aplicable específicamente a casos contributivos donde el Estado tiene un interés importante en recaudar rápidamente fondos para sus operaciones.

En esas circunstancias se ha aceptado una alternativa rápida e informal que permite al ciudadano conocer con anticipación las violaciones de ley imputadas y le reconoce una mínima oportunidad de exponer ante un funcionario —de forma oral o por escrito— su posición. *Goss* v. *Lopez*, 419 U.S. 565 (1975). El principio establecido en *Goss* v.

---

(¹) Las referencias, casos y materiales federales citados en esta opinión se invocan únicamente con fines comparativos.

*Lopez,* supra, es particularmente aplicable a situaciones análogas a las de este caso cuando una emergencia impide un procedimiento formal de tipo cuasi judicial. Sin embargo, a la persona afectada, por lo menos, se le deben informar las disposiciones legales aplicables y se debe brindar una oportunidad de ser oído. Véase Davis, *op. cit.,* pág. 474. Una vez comparece la persona afectada, el Estado mediante una breve explicación respaldada con determinaciones de hechos y de derecho, debe responder a su planteamiento. Concluida esta etapa informal, la persona agraviada debe tener una oportunidad adicional de solicitar una vista de tipo cuasi judicial ante un examinador imparcial encargado de efectuar conclusiones de hechos y de derecho que faciliten la revisión judicial.

En este caso el Departamento de Hacienda, mediante reglamento, estableció un procedimiento informal para considerar una solicitud de relevo de la contribución. Sin embargo, según concluye la opinión del Tribunal, ni el reglamento ni la práctica proveen para que se le informe a la persona afectada la decisión del Departamento con una explicación con determinaciones de hechos y de derecho. Tampoco en la etapa de la reconsideración se ofrece al ciudadano una vista de tipo cuasi judicial que culmine con un informe escrito con conclusiones de hechos y de derecho revisables por los tribunales.

Por las razones descritas anteriormente, estoy conforme con la opinión del Tribunal. Corresponde ahora al Departamento de Hacienda considerar de nuevo la solicitud de relevo mediante un procedimiento con las garantías jurídicas consagradas en el concepto del debido proceso.