Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL IX

| JESÚS MANUEL PEÑA ALEMÁN<br><br>Peticionario<br><br>v.<br><br>JASMÍN GENOVEVA HILARIO CRUZ<br><br>Recurrida | TA2025CE00902 | *CERTIORARI* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso número:<br>K MN2015-0005<br><br>Sobre:<br>Custodia |
|---|---|---|

Panel integrado por su presidenta, la juez Brignoni Mártir, el juez Salgado Schwarz y la juez Aldebol Mora.

Aldebol Mora, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 22 de diciembre de 2025.

Comparece el peticionario, José M. Peña Alemán, mediante la *Petición de Certiorari* de epígrafe y nos solicita que revoquemos la *Orden* emitida y notificada por el Tribunal de Primera Instancia, Sala Superior de San Juan, el 8 de diciembre de 2025. Mediante esta, el foro primario autorizó a la Dra. Ileana Carrión Maldonado, perito de impugnación del peticionario, el acceso a los informes sociales forenses con sus respectivos anejos, correspondientes a los años 2019, 2020, 2022 y 2024. Sin embargo, rehusó conceder la solicitud del peticionario, a los efectos de ampliar dicha orden para autorizar el acceso de la perito al expediente completo del caso.

Asimismo, el peticionario instó ante este Foro una *Moción solicitando paralización de los procedimientos*, en virtud de la cual solicitó la paralización de una vista que se llevaría a cabo el miércoles, 17 de diciembre de 2025, con el propósito de discutir el *Informe para el Manejo de Caso* presentado por las partes de manera conjunta. Tras considerar la solicitud de paralización, el 16 de diciembre de 2025 emitimos y notificamos una *Resolución*, mediante

la cual declaramos Ha Lugar la petición y ordenamos la paralización de la mencionada vista.

Por los fundamentos que se exponen a continuación, se expide el auto discrecional solicitado y se modifica la *Orden* recurrida. En consecuencia, se amplía la autorización concedida por el foro primario para beneficio de la Dra. Ileana Carrión Maldonado, de modo que también pueda examinar la totalidad del expediente del caso de epígrafe a nivel de instancia. En mérito de lo anterior, se deja sin efecto la orden de paralización emitida y notificada el 16 de diciembre de 2025.

**I**

El 29 de julio de 2025, el foro primario emitió una *Orden* que notificó el 31 de julio del mismo año.[1] Mediante esta, concedió a las partes un término de veinte (20) días para mostrar causa por la cual no procediera acoger las recomendaciones que surgen del Informe Social Forense (Informe Social) rendido el 18 de julio de 2025 por la Unidad Social del Centro Judicial de San Juan. Asimismo, el foro primario advirtió que, en caso de que las partes no comparecieran, se entendería que se allanan a que el Tribunal emita una *Resolución* en la que acoja dichas recomendaciones. En consecuencia, le ordenó a la Secretaría hacer accesible el Informe Social a los abogados de las partes, para su inspección.

Así las cosas, el 15 de agosto de 2025, Jesús M. Peña Alemán (Peña Alemán o el peticionario) instó una *Moción en Solicitud de Prórroga para Someter Impugnación al Informe Social Forense.*[2] Mediante el referido escrito, Peña Alemán notificó su deseo de impugnar el Informe Social, así como su intención de contratar algún perito experto que le asistiera en el análisis especializado del

---

[1] Véase Apéndice 1 del recurso.
[2] Véase Apéndice 2 del recurso.

contenido, así como en la elaboración de un informe pericial que sirviera de base a la impugnación.

El 21 de agosto de 2025, el foro *a quo* emitió otra *Orden.*[3] En esta ocasión, concedió a las partes un término de veinticinco (25) días para presentar una moción conjunta sobre manejo de caso.

Por su parte, el 15 de septiembre de 2025, el peticionario informó que, en cumplimiento con la orden del 15 de agosto de 2025, contrató como perito a la Dra. Ileana Carrión Maldonado (doctora Carrión Maldonado), quien es Trabajadora Social Forense.[4] Asimismo, solicitó que el foro primario le concediera autorización a la doctora Carrión Maldonado para acceder a los informes sociales y psicológicos que se han rendido en el presente caso, lo cual incluye los Informes Sociales sometidos el 17 de mayo de 2024 y el 18 de julio de 2025 por la Unidad Social del Centro Judicial de San Juan. Asimismo, reclamó se le concediera acceso a la perito a cualquier otro documento pericial que forme parte del expediente. Como fundamento a dicha solicitud, Peña Alemán expresó que "[e]l acceso a dichos informes permitirá que la perito contratada pueda analizar de manera fundamentada las controversias de hecho y técnicas señaladas por las partes, aportando evidencia objetiva y especializada para beneficio de este Honorable Tribunal en la determinación recurrida".

Como resultado, el 16 de septiembre de 2025, el foro *a quo* emitió una *Orden.*[5] En virtud de esta, concedió la autorización solicitada por el peticionario, para que la doctora Carrión Maldonado acceda a los Informes Sociales, con sus respectivos anejos. Así las cosas, el 17 de septiembre de 2025, las partes presentaron el *Informe para el Manejo de Caso* que les ordenó el foro primario.[6]

---

[3] Véase Apéndice 3 del recurso.
[4] Véase *Moción Informativa sobre Designación de Perito y Solicitud de Autorización de Acceso a Informes.* Apéndice 4 del recurso.
[5] Véase Apéndice 5 del recurso.
[6] Véase Apéndice 6 del recurso.

El 23 de octubre de 2025, Peña Alemán instó una *Moción en Solicitud de Autorización.*[7] Si bien reconoció que el foro *a quo* ya había autorizado el acceso de la doctora Carrión Maldonado a los Informes Sociales y sus anejos, en esta ocasión requirió ampliar dicha autorización para que se extienda a la totalidad del expediente judicial del caso a nivel de instancia. De este modo, razonó que el acceso de su perito a las alegaciones de las partes que dieron origen a los informes forenses previamente sometidos era necesario para contextualizar adecuadamente la información y para que esta pudiese cumplir a cabalidad con su encomienda profesional.

Tras evaluar la solicitud del peticionario, el 27 de octubre de 2025, el foro primario notificó una *Orden* en la que le concedió un término de diez (10) días a Jasmín G. Hilario Cruz (Hilario Cruz o la recurrida) para que expresara su postura al respecto.[8] En cumplimiento con la referida *Orden,* el 7 de noviembre de 2025, la recurrida presentó una *Moción en Cumplimiento de Orden.*[9] Mediante esta, se opuso a que se le concediese a la doctora Carrión Maldonado el acceso total al expediente del caso, según solicitó el peticionario.

Como fundamento, Hilario Cruz manifestó que la función de un perito de impugnación consiste en ayudar al Tribunal a determinar si el perito evaluador siguió los procesos establecidos para conducir la evaluación social y si las recomendaciones emitidas se sustentan en los hallazgos de dicha evaluación. Asimismo, aludió a la naturaleza confidencial que caracteriza a los expedientes de relaciones de familia y concluyó que la información que la doctora Carrión Maldonado requiere sobre las alegaciones de las partes en que se basaron los Informes Sociales previos, surge del contenido de los propios informes.

---

[7] Véase Apéndice 7 del recurso.
[8] Véase Apéndice 8 del recurso.
[9] Véase Apéndice 9 del recurso.

Así, tras considerar las argumentaciones de ambas partes, el 10 de noviembre de 2025, el foro primario emitió una *Resolución*, en la que dispuso como sigue: "A la Solicitud de Acceso a la totalidad del Expediente Judicial, No Ha Lugar. Se autoriza el acceso al Informe Social y sus anejos. De identificarse algún documento específico que amerite ser <u>evaluado</u>, así solicítelo la parte demandante".[10] (Subrayado en el texto original).

En desacuerdo, el 20 de noviembre de 2025, Peña Alemán instó una *Moción de Reconsideración.*[11] En esencia, argumentó que el dictamen del foro primario a los efectos de negarle a la doctora Carrión Maldonado acceso a la totalidad del expediente judicial a nivel de instancia se basa en una interpretación restrictiva del rol pericial, lo cual resulta contrario al alcance técnico necesario en una impugnación de informe social.

El 24 de noviembre de 2025, el foro primario le concedió un término de diez (10) días a la recurrida, para presentar su postura.[12] En cumplimiento de la referida orden, el 5 de diciembre de 2025, Hilario Cruz presentó una *Moción en Cumplimiento de Orden*, mediante la cual reiteró que no se opone a que la doctora Carrión Maldonado tenga acceso al contenido de los Informes Sociales Forenses y sus respectivos anejos.[13]

Tras considerar la postura de las partes, el 8 de diciembre de 2025, el foro primario emitió y notificó la *Orden* recurrida.[14] Mediante esta, dispuso lo siguiente: "No mediando objeción de la parte demandada, Sra. Jasmín Genoveva Hilario Cruz, se autoriza el acceso a la Dra. Ileana Carrión Maldonado, perito designada por la parte demandante, a los informes sociales forenses y sus anejos, de los años 2019, 2020, 2022 y 2024".

---

[10] Véase Apéndice 10 del recurso.
[11] Véase Apéndice 11 del recurso.
[12] Véase Apéndice 12 del recurso.
[13] Véase Apéndice 13 del recurso.
[14] Véase Apéndice 14 del recurso.

Todavía inconforme, el 10 de diciembre de 2025, el peticionario solicitó reconsideración.[15] Evaluada dicha petición, el foro primario la declaró No Ha Lugar, mediante una *Resolución* emitida el 10 de diciembre de 2025 y notificada al día siguiente.[16]

Insatisfecho, el 15 de diciembre de 2025, Peña Alemán acudió ante este Foro mediante el recurso de epígrafe y adujo que el foro *a quo* cometió el siguiente error:

> Erró el Tribunal de Primera Instancia al denegar el acceso de la perito de la parte peticionaria a las mociones que obran en el expediente judicial, incurriendo en un abuso de discreción que menoscaba el derecho a una impugnación pericial informada y efectiva del informe social forense en contravención a los principios de debido proceso de ley.

En igual fecha, el peticionario presentó una *Moción solicitando paralización de los procedimientos*. Mediante esta, Peña Alemán solicitó la paralización de una vista pautada para el miércoles, 17 de diciembre de 2025, con el propósito de discutir el *Informe para el Manejo de Caso* presentado por las partes de manera conjunta.

Tras considerar la solicitud de paralización, el 16 de diciembre de 2025 emitimos y notificamos una *Resolución*, mediante la cual declaramos Ha Lugar la petición y ordenamos la paralización de la mencionada vista. Asimismo, le concedimos a la recurrida hasta el viernes, 19 de diciembre de 2025, para mostrar causa por la cual no debamos revocar el dictamen recurrido.

Transcurrido el referido término, Hilario Cruz no compareció, por lo que procedemos a resolver, sin el beneficio de su comparecencia.

## II

### A

El *certiorari* es un recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar discrecionalmente una

---

[15] Véase Apéndice 15 del recurso.
[16] Véase Apéndice 16 del recurso.

decisión de un tribunal inferior. *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194, 207 (2023); *Torres González v. Zaragoza Meléndez*, 211 DPR 821, 846-847 (2023); *Caribbean Orthopedics v. Medshape et al.*, 207 DPR 994, 1004 (2021). Ahora bien, tal discreción no opera en lo abstracto. Con respecto a lo anterior y para revisar los dictámenes interlocutorios del Tribunal de Primera Instancia, la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, dispone, en su parte pertinente, lo siguiente:

> El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 de este apéndice o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.
>
> [. . .]

Según se desprende de la citada Regla, este foro apelativo intermedio podrá revisar órdenes interlocutorias discrecionalmente, cuando se recurre de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía o en **casos de relaciones de familia** o que revistan interés público. Así también, la referida disposición establece que este Foro podría ejercer su discreción para revisar resoluciones y órdenes interlocutorias en aquellas circunstancias en las que revisar el dictamen evitaría un irremediable fracaso de la justicia, entre otras contadas excepciones.

A esos efectos, la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40, dispone los criterios a considerar para ejercer sabia y prudentemente su decisión de atender o no las controversias ante sí. *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 96-97 (2008). Véase, además, *BPPR v. SLG Gómez-López*, 213 DPR 314 (2023); *Rivera et al. v. Arcos Dorados et al.*, supra; *Pueblo v. Rivera Montalvo*, 205 DPR 352, 372 (2020). Así, la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*, funge como complemento a la Regla 52.1 de Procedimiento Civil, *supra. Torres González v. Zaragoza Meléndez*, supra. La precitada Regla dispone lo siguiente:

> El [T]ribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:
>
> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> (E) Si la etapa de los procedimientos en que se presenta el caso es la más propicia para su consideración.
>
> (F) Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> (G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. 4 LPRA Ap. XXII-B, R. 40.

Sin embargo, ninguno de los mencionados criterios es determinante, por sí solo, para este ejercicio y no constituye una lista exhaustiva. *García v. Padró*, 165 DPR 324, 335 esc. 15 (2005). Por tanto, de los factores esbozados "se deduce que el foro apelativo

intermedio evaluará tanto la corrección de la decisión recurrida, así como la etapa del procedimiento en que es presentada; esto, para determinar si es la más apropiada para intervenir y no ocasionar un fraccionamiento indebido o una dilación injustificada del litigio". *Torres Martínez v. Torres Ghigliotty*, supra, pág. 97. (Énfasis omitido).

Nuestro Tribunal Supremo ha expresado también que, de ordinario, el tribunal revisor "no intervendrá con el ejercicio de la discreción de los tribunales de instancia, salvo que se demuestre que hubo un craso abuso de discreción, o que el tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial*". Zorniak Air Servs. v. Cessna Aircraft Co.*, 132 DPR 170, 181 (1992), citando a *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986). Véase, además, *Rivera y otros v. Bco. Popular*, 152 DPR 140, 155 (2000).

**B**

La Sección 7 del Artículo II de la Constitución de Puerto Rico, al igual que las Enmiendas V y XIV de la Constitución de los Estados Unidos, garantizan que ninguna persona será privada de su libertad o propiedad sin el debido proceso de ley. Art. II, sec. 7, Const. PR, LPRA, Tomo 1; Emdas. V y XIV, Const. EE.UU. Esta garantía procesal funciona de dos vertientes: la sustantiva y la procesal.

En lo relevante a la procesal, se ha entendido que "el debido proceso de ley procesal le impone al Estado la obligación de garantizar que la interferencia con los intereses de libertad y propiedad del individuo se haga a través de un procedimiento que sea justo y equitativo". *Rivera Rodríguez & Co. v. Lee Stowell, etc.,* 133 DPR 881, 887 (1993); *López Vives v. Policía de P.R.,* 118 DPR 219 (1987). Así también, el Tribunal Supremo ha reiterado que el

debido proceso de ley no se satisface a menos que se observen garantías procesales suficientes para que la parte pueda ser oída antes de la adjudicación del derecho en controversia. *Rivera Rodríguez & Co. v. Lee Stowell, etc.,* supra, págs. 889-890.

De este modo, para garantizar las exigencias mínimas del debido proceso de ley, todo procedimiento adversativo debe satisfacer lo siguiente: (1) notificación adecuada del proceso; (2) proceso ante un juez o jueza imparcial; (3) oportunidad de ser oído; (4) derecho a contrainterrogar testigos y examinar la evidencia presentada en su contra; 5) asistencia de representación legal; y (6) que la decisión se base en la evidencia presentada y admitida en el juicio. *Hernández v. Secretario*, 164 DPR 390, 395-396 (2005); *Rivera Rodríguez & Co. v. Lee Stowell, etc.*, supra, pág. 889. A esos efectos, la característica medular de la garantía del debido proceso de ley es que el procedimiento seguido sea uno justo. *Rivera Santiago v. Srio. de Hacienda,*119 DPR 265, 274 (1987).

A la luz de la normativa antes expuesta, procedemos a disponer del caso ante nuestra consideración.

**III**

Mediante el único señalamiento de error esbozado en el recurso de epígrafe, Peña Alemán argumentó que el foro primario incidió al denegar el acceso de la doctora Carrión Maldonado a las mociones que obran en el expediente judicial. Es la postura del peticionario que, al así actuar, el foro *a quo* incurrió en un abuso de discreción que menoscaba su derecho a una impugnación pericial informada y efectiva del Informe Social. Ello, en contravención a los principios de debido proceso de ley. Como veremos a continuación, el foro *a quo* incidió al no permitirle a la doctora Carrión Maldonado acceso a la totalidad del expediente judicial a nivel de instancia.

En la argumentación del error señalado, el peticionario razonó que la determinación recurrida le coloca en una posición procesal

desventajosa, debido a que le priva de los medios mínimos necesarios para preparar una impugnación pericial informada y efectiva. Ello, a su juicio, resulta incompatible con su derecho al debido proceso de ley, así como con los principios de debido proceso, equidad procesal y sana administración de la justicia. Tiene razón.

Si bien los expedientes judiciales correspondientes a aquellos asuntos que versan sobre relaciones de familia son, por su naturaleza, cerrados al público y sus expedientes confidenciales,[17] resulta relevante aludir a la Regla 62.1(b) de Procedimiento Civil, 32 LPRA Ap. V, R. 62.1(b). La referida disposición establece lo siguiente:

> La información sobre los expedientes de los casos que por ley o por el tribunal, a iniciativa propia o a solicitud de parte, se disponga su confidencialidad, así como las copias de éstos, **podrán ser mostradas o entregadas sólo a personas con legítimo interés, o a otras personas mediante una orden judicial y por causa justificada**. Sólo se suministrarán, previa muestra de necesidad y con el permiso expreso del tribunal, a funcionarios o funcionarias del Tribunal General de Justicia en sus gestiones oficiales y aquellas personas de acreditada reputación profesional o científica que prueben por escrito su interés en obtener información para la realización de sus labores oficiales, estudios o trabajos, y siempre bajo las condiciones que el juez o la jueza estipule. (Negrillas suplidas).

Sobre el modo en que aplican los imperativos del debido proceso de ley a un caso de custodia de menores en el que media prueba pericial, el Tribunal Supremo ha dispuesto que "los requisitos mínimos del debido proceso de ley exigen que las partes tengan la oportunidad de examinar la prueba pericial que le es adversa y contrainterrogar a los peritos que la produjeron, esto para propósitos de impugnación". *Rentas Nieves v. Betancourt Figueroa*, 201 DPR 416, 432 (2018).

El caso ante nos versa sobre una controversia de custodia respecto a unos menores que las partes procrearon. Así, para fines de impugnar el Informe Social preparado por la Unidad Social del Centro Judicial de San Juan, el peticionario contrató a la doctora

---

[17] Véase *Rentas Nieves v. Betancourt Figueroa*, 201 DPR 416, 431 (2018).

Carrión Maldonado como perito de impugnación, experta en el campo de Trabajo Social Forense.

Si bien comprendemos la naturaleza confidencial de los expedientes judiciales correspondientes a casos de la naturaleza del de epígrafe, somos del criterio que el rol que ejerce la doctora Carrión Maldonado la convierte en *parte con interés*. Consideramos que, a su vez, ello constituye *causa justificada* para concederle el acceso solicitado al expediente judicial; principalmente, por tratarse su labor de un corolario directo del derecho constitucional al debido proceso de ley que le asiste al peticionario. No podemos olvidar que la labor que un perito de impugnación está llamado a realizar es inherente al ejercicio del derecho que le asiste a la parte que le contrató, tanto de ser oído, como de refutar cualquier prueba que le pueda resultar perjudicial.

**IV**

Por los fundamentos que anteceden, se expide el auto discrecional solicitado y se modifica la *Orden* recurrida. En consecuencia, se amplía la autorización concedida por el foro primario para beneficio de la Dra. Ileana Carrión Maldonado, de modo que esta también pueda examinar la totalidad del expediente del caso de epígrafe a nivel de instancia. Así también, se deja sin efecto la orden de paralización emitida y notificada por este Foro el 16 de diciembre de 2025.

**Notifíquese inmediatamente.**

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones